IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ROMECO WILLIAMS,** | ) | Civil Action No. 7:15cv00041 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CAPT. DAVID STILL,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Romeco Williams, a Virginia inmate proceeding *pro se*, filed a verified complaint pursuant to 42 U.S.C. § 1983. Williams names several staff of the Red Onion State Prison ("ROSP") as defendants: Captain David Still, Lieutenant Justin Kiser, Sergeant Owens, and Correctional Officers ("C/O") Farmer, Brinkley, and Owens. Williams argues that defendants violated the Eighth Amendment by using excessive force and by restraining him in his own bodily wastes, and the Fourteenth Amendment by losing his personal property. Defendants filed a motion for summary judgment, and Williams responded, making this matter ripe for disposition.[1] Upon consideration of this action, I conclude that disputes of material facts preclude summary judgment for the excessive force claims, but defendants are entitled to summary judgment for all other claims.

## I.

Williams was transferred to ROSP after he "assaulted [a corrections officer] . . . with a glove of urine" at a different prison. On October 28, 2014, Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley escorted Williams from a transportation van into the intake area of ROSP. The parties dispute what happened next.

---

[1] Williams also filed a reply to defendants' answer, but I do not consider it because he was not ordered to do so. Fed. R. Civ. P. 12(a)(1)(C).

Williams claims that these officers began to beat him for several minutes while he was complacent and in multiple restraints, culminating in his "partial" unconsciousness after Lt. Kiser slammed his head into a wall while Williams was kneeling. Williams claims he was attacked due to defendants' alleged racism. Williams further asserts that Capt. Still threatened Williams with another beating if Williams did not refuse the post-transfer medical evaluation and that the other defendants twisted his fingers to keep him silent. He states that the spit-smock over his head, other restraints, and clothes hid any injuries from being seen.

In contrast, defendants aver that Williams became disorderly and head-butted C/O Farmer in the shoulder and collarbone and that C/Os Farmer and Brinkley secured Williams on the floor. After a video camera was delivered to the vestibule per Capt. Still and Lt. Kiser's order, Sgt. Owens began video recording Williams, and C/O Farmer left for the medical department for an assessment of his shoulder. Defendants claims that Williams freely decided to refuse a nurse's exam.

The parties agree that Williams was then held in five-point restraints between 3:30 p.m. and 12:00 a.m. in ROSP's B building, but they disagree on the restraints' purpose.[2] Williams claims that the lie about head-butting C/O Farmer was used to justify the unnecessary five-point restraints and to "cover-up" the beating. Defendants claim that the five-point restraints were a necessary use of force to restore discipline after Williams attacked C/O Farmer. Once secured in five-point restraints, a nurse noted in a medical chart that she did not see any injury and that Williams did not mention any injury.

Williams further faults Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley for the conditions of confinement he experienced while in five-point restraints. Specifically,

---

[2] Five-point restraints mean an inmate's chest and each arm and leg are strapped to a bed.

Williams states that he did not receive dinner and was not given a bathroom break until 10:00 p.m., resulting in him sitting in his own urine and feces for six and a half hours. Defendants aver that Capt. Still, Sgt. Owens, and C/Os Farmer and Brinkley had no responsibility for, or involvement with, Williams after he was secured in five-point restraints in the B building. Lt. Kiser, who was the B building supervisor, claims that he never refused to allow a bathroom break for Williams and that he left ROSP at 6:00 p.m. Lt. Kiser further claims that Williams should have been provided a restroom break between 3:30 p.m. and 6:00 p.m. and that the next shift's supervisors were responsible for Williams' care after 6:00 p.m.

After being released from five-point restraints, Williams claims that his personal property had been lost. However, Williams later received all the property he thought was lost.

## II.

Williams seeks, *inter alia*, damages against Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley for the alleged beating, for the use of five-point restraints, and for not giving him a meal or a bathroom break. Williams also seeks, *inter alia*, damages against C/O Owens for the misplaced property.

Defendants filed a motion for summary judgment, arguing that, *inter alia*, they are protected by qualified immunity.[3] The defense of qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[3] Although defendants also argue that Williams failed to exhaust administrative remedies, it is more appropriate to first resolve defendants' claim to qualified immunity. Qualified immunity resolves most of the claims without the need for discovery whereas resolving exhaustion may necessitate additional discovery. *See* 42 U.S.C. § 1997e(c) (permitting a court to resolve claims that, *inter alia*, seek monetary relief from a defendant who is immune without first requiring exhaustion of administrative remedies); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) ("The protection of qualified immunity gives officials a right . . . to avoid the burdens of such pretrial matters as discovery.").

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court considers two questions to resolve qualified immunity: whether the undisputed facts show that the government official's actions violated the plaintiff's constitutional rights, and whether the right at issue was "clearly established" at the time of the events. *See, e.g.*, *id.* at 236.

After reviewing Williams' submissions, I will grant in part defendants' motion for summary judgment as to C/O Owens for the property claim and as to the remaining defendants for the missed meal and bodily wastes claims. However, disputes of material facts preclude summary judgment for the claims about the alleged beating and use of five-point restraints by Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley.

**III.**

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the

non-movant must set forth specific facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by a defendant's motion for summary judgment. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

  A. Excessive force claims about the alleged beating and five-point restraints

  The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, a court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the

5

force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010).

Williams' claims about the alleged beating and five-point restraints do state a violation of federal law clearly established before October 28, 2014, but all five *Whitley* factors are in dispute based on the parties' clearly divergent recollections. *See, e.g.*, *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley could not have applied force "in a good faith effort to maintain or restore discipline" if they suddenly attacked Williams for no reason other than racism, as Williams asserts. Further, an Eighth Amendment violation occurs when five-point restraints are used on an inmate who does not pose any threat to security or discipline or for no reason other than racism. *See, e.g.*, *Williams v. Benjamin*, 77 F.3d 756, 763-65 (4th Cir. 1996); *Sadler v. Young*, 325 F. Supp. 2d 689, 704 (W.D. Va. 2004); *Davis v. Lester*, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001). While the lack of injury in the medical record is notable, Williams contends that no medical record could have been made for two reasons. First, defendants allegedly threatened and inflicted pain to force Williams to keep silent and waive an examination. Second, his injuries were hidden from a nurse's view by clothes, restraints, and the spit smock. Accordingly, disputes of material facts about the alleged beating and use of five-point restraints preclude summary judgment and qualified immunity for these claims.

B. The missed meal and bathroom breaks

In order to establish cruel and unusual living conditions, a prisoner must prove that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Strickler*, 989 F.2d at 1381. The subjective component of a challenge to conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. Instead, it requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

It is well established that skipping one meal does not constitute cruel and unusual punishment. *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (affirming dismissal of Eighth Amendment claim about missing one meal as frivolous and indisputably meritless); *see also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing a violation of

7

policy does not automatically equate to a violation of a federal right). Accordingly, defendants are entitled to summary judgment and qualified immunity for the claim about not receiving dinner.

Even if, *arguendo*, Williams suffered a deprivation of a basic human need by not having access to a toilet while in five-point restraints, he fails to establish any defendant's deliberate indifference to that need. Lt. Kiser was the only defendant who had any nexus to the B building once Williams was in five-point restraints, and Williams does not allege that Lt. Kiser knew that Williams either needed to use a toilet or had soiled himself while in five-point restraints. Consequently, Williams has not described how any defendant actually knew of or recklessly disregarded Williams' unsanitary state. Accordingly, defendants are entitled to summary judgment and qualified immunity for the claim about Williams soiling himself while in five-point restraints.[4]

C. Misplaced property

Williams alleged in the complaint that the loss of personal property violates due process, but he subsequently stated that he received all the property he thought was lost. No violation of federal law occurred as a result of the misplaced property, and defendants are entitled to summary judgment and qualified immunity for this claim. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-39 (1981).

**IV.**

For the reasons stated, I will grant defendants' motion for summary judgment as to the claims about the missed meal, being restrained in bodily wastes, and delayed receipt of property,

---

[4] I recognize that, if this matter proceeds to trial, evidence about the missed meal and bathroom breaks may be admissible as to damages for the five-point restraints claim.

and I will deny it as to the alleged beating and use of five-point restraints by Capt. Still, Lt. Kiser, Sgt. Owens, and C/Os Farmer and Brinkley.

Having resolved the issue of qualified immunity at the earliest possible stage in the litigation, I will direct the remaining defendants to file a motion for summary judgment addressing the exhaustion of administrative remedies. *See, e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

**ENTER**: This  2nd  day of  March, 2016

                                                 s/Norman K. Moon
                                                 United States District Judge